STATE of Missouri, ex rel. Enos A. AXTELL, Sr., Individually and as Assignee of Redwood Hills Development Company, Relator,

v.

The Honorable William J. MARSH, Judge of the Circuit Court of Jackson County, Missouri, Sixteenth Judicial Circuit, Division One, Respondent.

No. WD 32947.

Missouri Court of Appeals, Western District.

Nov. 3, 1981.

Danny L. Curtis and Joseph W. Lampo, Kansas City, for relator.

Marion W. O'Neill, Kansas City, for respondent.

Before SOMERVILLE, C. J., Presiding, and KENNEDY, SHANGLER, PRITCHARD, TURNAGE, CLARK and LOWENSTEIN, JJ.

KENNEDY, Judge.

This is a petition for a writ of prohibition against respondent circuit judge, to prohibit his vacating an earlier order which had dismissed the petition of plaintiff D. Jack Bean, Inc., in a cause pending before him. We issued our preliminary rule. We have concluded that the respondent judge was acting within his powers in vacating said order of dismissal, and the preliminary rule is discharged.

The facts are these:

D. Jack Bean, Inc., a Missouri corporation, filed its petition in the Circuit Court of Jackson County. The petition was in 10 counts, against 14 defendants.

We will begin with a description of the claims, counterclaims and cross-claims pending in the case at the time of the October 9, 1980, dismissal of plaintiff's petition:

The case arose out of a 1973 construction contract whereby plaintiff D. Jack Bean, Inc., contracted to build a Sheraton Inn motel for the owner, defendant Redwood Hills Development Co. Bean claimed a balance due upon the contract in the sum of $214,748.50, plus added items amounting to $22,910.14. It claimed a judgment against Redwood Hills Development Company for the unpaid amount, and a lien upon the improved real estate.

The second count of the petition was against Redwood Hills Development Company and Enos A. Axtell, Sr., and Enos A. Axtell, Jr., individually. The Axtells were identified as president and vice-president respectively of Redwood Hills Development Company. This count charged the defendants with failure to furnish adequate architectural plans and specifications, with tardiness in decisions in the administration of the construction contract and with interference which delayed the progress of construction. It claimed damages of $500,000 resulting from additional costs to the plaintiff occasioned by the defendants' wrongful conduct.

Count III is a claim against Redwood Hills Development Company for $20,000 damages for failure to make timely payment to plaintiff of progress payments.

Count IV asks for a declaratory judgment declaring that plaintiff was not at fault for delay in the contract completion date and therefore not liable for the penalty provided in the contract for delay in completion.

Counts V and VI claim actual and punitive damages against Redwood Hills and the Axtells for slanderous statements alleged to have been made by them which impugned the integrity, competence and solvency of the plaintiff.

Count VIII alleges that the acts and omissions of Redwood Hills and of the Axtells, as alleged in earlier counts of the petition, has prevented Travelers Indemnity Company from writing contract performance bonds for the plaintiff, to plaintiff's damage of $500,000.

Finally, Count IX requests a declaratory judgment that the plaintiff is not required to complete the paving portion of the contract, because of the wrongful interference of Redwood Hills and the Axtells with a contract between Bean and a paving subcontractor.

That completes a description of plaintiff's claim for relief in his petition, and we turn now to the counterclaims and cross-claims filed in the case.

Redwood Hills counterclaimed for $500,000 damages for plaintiff Bean's alleged default in the performance of the contract. The Travelers Indemnity Company, as surety on the contract performance bond, was brought in as a third-party defendant. In the same pleading Enos A. Axtell, Sr., counterclaimed against plaintiff Bean for 2.5 million dollars actual and punitive damages for libel.

Third-party defendant Travelers Indemnity Company filed its own cross-claim for judgment against plaintiff Bean for any amount for which it might be found liable to Redwood Hills upon its bond—and in any event for attorneys' fees and other litigation expenses incurred in defending against the Redwood Hills claim.

The plaintiff corporation at the time of filing the petition and thereafter until January 1, 1977, was a duly organized and existing corporation under the laws of the State of Missouri. On January 1, 1977, however, its corporate franchise was forfeited by the secretary of state for failure to comply with certain annual filing and franchise tax requirements, § 351.525, RSMo 1969. The forfeiture of plaintiff's corporate franchise was suggested to the court by motions to dismiss filed by various of the defendants, including relators here. The motions concluded with the prayer: "Wherefore, defendants pray for an order dismissing the petition of plaintiff against all defendants."

The trial court on October 9, 1980, entered the order which is at the center of this case. The order stated: "Now on this day, motions of defendants Redwood Hills Development Company, Enos Axtell, Sr., Enos Axtell, Jr., Chicago Title Insurance Company, Southgate State Bank & Trust Company, Samuel J. Molby as trustee for Southgate State Bank & Trust Company, Sheraton Inns, Inc., and ITT Sheraton Cor-

poration of America, to dismiss plaintiff's first amended petition are hereby taken up, considered and sustained for the reasons suggested by said defendants. Wherefore, it is hereby ordered that plaintiff's first amended petition and affirmative claim for relief, and all of them, be and the same is and are hereby dismissed."

Subsequently on July 2, 1981, the trial court entered an order vacating the October 9, 1980, order copied in the preceding paragraph. This July 2, 1981, order (the court's power to make which is challenged in this proceeding) recited that the forfeiture of the plaintiff's corporate charter had been rescinded on June 18, 1981. It ordered plaintiff's first amended petition reinstated and ordered that all responsive pleadings be considered as refiled.

Relator's position is that the October 9, 1980, order was a judgment, since it was an order of dismissal and does not say that the dismissal was without prejudice, citing Rule 67.03; that it became final after 30 days and was no longer subject to the trial court's control, Rule 75.01; and that the court's order of July 2, 1981, purporting to vacate the October 9, 1980, order of dismissal, was beyond the court's power to make.

■ We have concluded, however, that the October 9, 1980, order of dismissal was interlocutory, that the court therefore retained control over the same throughout the litigation, and was within his power in setting it aside.

*Involuntary dismissal of claims when counterclaims and third-party claims remain pending, finality of same; Rule 81.06.*

Our reason for holding the order to be interlocutory and not final, as subject to the trial court's control throughout the litigation, is found in *State ex rel. Schweitzer v. Greene*, 438 S.W.2d 229 (Mo. banc 1969); *Ray Nolting Oldsmobile Co. v. 66 Watson Development Co.*, 518 S.W.2d 167 (Mo.App. 1974); *Beezley v. National Life and Accident Insurance Co.*, 464 S.W.2d 535 (Mo. App.1971). That reason is that there re-

mained pending counterclaims and cross-claims in the case, which prevented the finality of the October 9, 1980, order of dismissal.

Relators acknowledge this to be the general rule, citing *Bennett v. Wood*, 239 S.W.2d 325, 327–328 (Mo.1951), and *Baumstark v. Jordan*, 540 S.W.2d 611, 612 (Mo. App.1976). They say, however, that "if the cause of action dismissed is not dependent on the outcome of the issues left to be determined and there is no provision in the order of dismissal that it is interlocutory or to be held in abeyance, then the dismissal is a final judgment". They contend that the October 9, 1980, order is one of the latter kind, and therefore final. They argue that the plaintiff's claims were independent of the rest of the case, and unrelated to them. For that proposition they cite Rule 81.06 and the cases of *Crenshaw v. Great Central Insurance Company*, 527 S.W.2d 1 (Mo.App. 1975), and *State ex rel. Ashcroft v. Gibbar*, 575 S.W.2d 924, 927 (Mo.App.1978). In *Crenshaw*, there was a petition in three counts. Count I was by the parents of Dale Crenshaw for damages for Dale's wrongful death. Count II was by Gretchen for personal injury to herself. Count III was by the father of Gretchen for medical expenses necessitated by Gretchen's personal injuries. The trial court upon motion dismissed Count I because barred by the two-year statute of limitations, leaving Counts II and III undisposed of. The court held that the order dismissing Count I was a final and appealable judgment under Rule 81.06. It will readily be seen that the wrongful death claim constituted a case entirely separate and independent from Gretchen's own case, and separate and independent from that of her father for her medical care. It could be surgically separated from those two counts and was "entirely separate and independent claim(s) unrelated to" the other two claims.

Similarly, in *State ex rel. Ashcroft v. Gibbar*, supra, the dismissal of one count of a third-party petition was held to be an appealable order, although the original ac-tion remained pending. The case was commenced by the Clean Water Commission against defendants Gibbar, charging them with operating a sewage system without a permit and discharging raw sewage into a sink hole beneath Perry Plaza Shopping Center and eventually into waters of the state. The petition asked injunctive relief and money penalties.

The defendants Gibbar filed a third-party petition. In the first count of the third-party petition, defendants sought a judgment over against their predecessors in title and against Perry Plaza, Inc., for any amount which plaintiffs might recover against them. The claim against Perry Plaza was based upon its alleged breach of an agreement to accept sewage into a system to be built by it.

In the second count of the third-party petition the defendants sought money damages against Perry Plaza for its breach of the agreement mentioned in Count I, and also claimed an easement across land owned by Perry Plaza into a sewage system located thereon which eventually runs into a municipal sewer system.

The trial court dismissed the entire third-party petition as not stating a cause of action. Defendants (third-party plaintiffs) appealed. The first issue was whether the order of dismissal was final for purposes of appeal.

The court held that the order dismissing Count II was final, for it was (1) "a disposition of the action upon the merits" (though not stated to be with prejudice), and (2) it was "in no way dependent on the outcome of the original action ... or of Count I of owners' third-party petition".

Both factors cited in *Ashcroft* as indicating finality of the dismissal of Count II are absent here.

First, the dismissal in our case was not "a disposition of the action upon the merits". The dismissal had nothing at all to do with the merits of the case; it had to do only with plaintiff's capacity to sue. It recog-

nized plaintiff's impotence to proceed, having lost its corporate status. That status of course could and might be restored at any time by the secretary of state's rescission of the forfeiture. Sec. 351.540.1, RSMo 1978. The effect of the rescission of the forfeiture would be to validate all acts of the corporation taken during the period of suspension, and actually to treat the forfeiture as if it had never occurred. Sec. 351.540.2, RSMo 1978; *A.R.D.C., Inc., v. State Farm Fire and Casualty Co.*, 619 S.W.2d 843 (Mo.App. 1981).

Second, in our case the plaintiff's claims were not independent of and unrelated to the counterclaims, cross-claims and third-party claims left pending at the time of the dismissal. In *Ashcroft* the court said:

> Applying the principles of *Crenshaw*, plaintiffs in the original action and (defendants' predecessors in title), defendants in Count I of the third-party petition, are not parties to Count II of the third-party petition. The action relates to the sewage system but the controversy is solely between owners and Plaza. The final disposition of Count II of the third-party petition is in no way dependent on the outcome of the original action filed by plaintiffs or of Count I of owners' third-party petition. The court did not order Count II to be interlocutory or held in abeyance pending disposition of the other issues in the litigation. The dismissal of Count II of owners' third-party petition was a final appealable order and we have jurisdiction to determine the issues presented with respect to that count of the third-party petition.

*State ex rel. Ashcroft v. Gibbar*, supra at 928.

*Ashcroft* and *Crenshaw*, therefore, are both cases in which the claims dismissed in the trial court were claims which could be cleanly broken out of the whole case and dealt with separately as an "entirely separate and independent claim unrelated to any other claims stated or joined in the case".[1]

In *State ex rel. Ashcroft v. Gibbar*, supra, although we have held that it does not support the proposition for which relators cite it, another portion of the case does support the conclusion we have reached.

The court had also dismissed Count I of the third-party petition, which count sought indemnity from the third-party defendants in the event that plaintiffs (Missouri Clean Water Commission) recovered a money judgment against owners (defendants) and third-party plaintiffs. In holding that dismissal to be interlocutory and not final, the court said: "It is obvious that any liability that (third-party defendants) might have is dependent upon the disposition of the plaintiff's action against owners and would not be an appealable order. Rule 81.06. (Citation omitted)". That situation is analogous to our case, where Redwood Hills, the owner and defendant, has a counterclaim pending against plaintiff D. Jack Bean, Inc., and a third-party claim against the Travelers Indemnity Company as surety, for damages for plaintiff's breach of the construction contract. Travelers in turn has a claim against D. Jack Bean, Inc., for any amount which it may become liable to pay to Redwood Hills Development Company upon its bond. This claim of Travelers is dependent upon the disposition of Redwood Hills' claim against Bean.

But Travelers' claim for indemnity aside, there is no way to hold that the mutual claims of the contracting parties as we have described them above, could be held to be "entirely separate and independent (claims) unrelated to any other claims stated or

---

1. We reserve the question whether the court's order of dismissal in the present case, based upon plaintiff's forfeiture of its corporate charter, could be considered as a "separate trial before the court without a jury" within the meaning of Rule 81.06. *See State ex rel. Ashcroft v. Gibbar*, 575 S.W.2d 924, 927, where the court said: "The dismissal of a petition or a count in a petition upon the hearing of a motion to dismiss *for failure to state a claim upon which relief can be granted* is a separate trial before the court without a jury within the meaning of Rule 81.06. *Johnson v. Great Heritage Life Insurance Company*, 490 S.W.2d 686, 689 (Mo.App.1973)." (Emphasis mine.)

joined in the case", Rule 81.06. Note the emphatic language of the rule.

Although the mutual claims of slander and libel might be isolated from the rest of the case so that the disposition of one would be final even though not expressed to be so (a question on which we express no opinion), still the mutual claims of the parties based upon unpaid contract balance and upon breach of contract are so inextricably joined that they could in no way be treated as separate, independent and unrelated claims.

■ Respondent has filed a motion for award of costs, pursuant to § 530.070, RSMo 1978, and has attached thereto a "certificate of costs" setting up the cost of printing his brief. The cost of printing a brief is not a "cost" contemplated by § 530.070. An item is not taxable as "costs" unless specifically authorized by statute or by agreement of the parties. *Groves v. State Farm Mutual Automobile Insurance Co.*, 540 S.W.2d 39 (Mo. banc 1976). No statute or agreement authorized the award to respondent of the cost of preparing his brief.

For the foregoing reasons, the preliminary writ of prohibition is discharged. The motion for award of costs is denied.

All concur.